UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| CYNTHIA THORPE, as NEXT FRIEND and On behalf of D.T., a minor child,<br><br>    Plaintiff,<br><br>V.<br><br>BREATHITT COUNTY BOARD OF EDUCATION, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 5:11-CV-294-KKC<br><br><br>**MEMORANDUM, OPINION, & ORDER** |

\*\*\* \*\*\* \*\*\*

This motion is before the Court on the Breathitt County Board of Education's ("the Board's") motion to reconsider (DE 77) this Court's previous order on the defendants' motion for summary judgment. For the reasons explained below, the Court will deny the Board's motion.

### I. PROCEDURAL AND FACTUAL BACKGROUND

A more complete description of the facts in this case can be found in this Court's opinion and order entered on March 21, 2014. (DE 76). In her complaint, plaintiff Cynthia Thorpe, on behalf of her minor daughter D.T., alleges that a teacher at Sebastian Middle School in Breathitt County, defendant Charles Mitchell, made sexual advances toward D.T. (DE 1, p. 7). Thorpe further alleges that the principal of Sebastian Middle, Reggie Hamilton, and the superintendent of Breathitt County Schools, Arch Turner, knew that Mitchell had sexually harassed other Sebastian Middle School female students. (DE 1, p. 7).

In a claim arising from Title IX, an appropriate official must be on actual notice that there is a substantial risk of abuse to other students. Thorpe's evidence as to this element of her Title

IX claim involves a prior incident regarding another Sebastian Middle School student, A.R., which Thorpe contends put the officials on notice. The facts surrounding the A.R. incident are largely in dispute. However, Thorpe alleges that Turner and Hamilton knew that Mitchell had texted A.R. 168 times in one night, knew that the contents of the message were of a sexual nature, knew that Mitchell had texted other eighth grade girls: "T., B., E., and T.," and knew that Mitchell had talked to girls about their boyfriends, as well as what other girls thought about Mitchell. In response, Turner and Hamilton decided to suspend Mitchell for ten days without pay, but rehired him for the following school year. Hamilton's efforts to retrieve the contents of the text messages between Mitchell and A.R. were unsuccessful. Eventually, the school became aware that Mitchell had been sending sexually explicit Facebook messages to D.T., and Mitchell resigned from his position.

On March 20th, 2014, this Court entered an order granting defendants' motion for summary judgment, except as to Thorpe's Title IX claim. The Board now contends that this Court's decision to deny its motion for summary judgment on the Title IX claim was in error.

**II. STANDARD**

Motions to reconsider are evaluated under the same standard as a motion to alter or amend a judgment under Rule 59(e). *Howard v. Magoffin Co. Bd. Of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2012) (citing *Keith v. Bobby*, 618 F.3d 594, 597–98 (6th Cir. 2010)). To succeed, plaintiffs must show one of the following: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Id.* (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). However, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.

1998). Instead, "[m]otions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Id.*

### III. ANALYSIS

Defendant's motion to reconsider is premised primarily on an unpublished 2013 Sixth Circuit Court of Appeals decision, *McCoy v. Board of Educ. Columbus City Sch.*, 515 Fed. Appx. 387, 2013 WL 538953 (6th Cir. Feb. 13, 2013). As an initial matter, unpublished opinions are not controlling in this Circuit. *See Shuler v. Garrett*, 715 F.3d 185, 187, n. 1 (6th Cir. 2013); 6 Cir. R. 32. 1 ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."). Thus, the *McCoy* case does not represent an intervening change in controlling law; nor can it represent a clear error of law. Nevertheless, even assuming *McCoy* is controlling, it does not change the outcome of the Board's motion for summary judgment in this case.

To assert an action under Title IX, Thorpe must show: (1) Mitchell abused D.T.; (2) a school official with sufficient authority had actual notice that Mitchell posed a substantial risk of sexual abuse to other students; and (3) the school district was deliberately indifferent to that substantial risk.[1] *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 363 (6th Cir. 2005) (affirming jury instructions of the district court in a Title IX case). In the instant case, the parties disagree about how much Turner and Hamilton knew about the A.R. incident, but the

---

[1] As way of clarification, this Court dismissed Thorpe's § 1983 claims against the Board, Hamilton, and Turner in its previous order. (DE 76). § 1983 liability is very similar to Title IX liability in these cases. However, the claims are distinct. First, in order for the Board to be liable under a § 1983 claim, the Board *itself* must be the wrongdoer, and there must be behavior rising to the level of a custom or policy on behalf of the district. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). There are no facts to support such a claim in this matter. With regard to individual liability of Turner and Hamilton under § 1983, the Sixth Circuit has reiterated that there must be "active unconstitutional behavior." *Doe ex rel Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). "In the absence of any allegation that the supervisors had participated, encouraged, authorized or acquiesced in the offending conduct, we held that the supervisors had, as a matter of law, neither committed a constitutional violation nor, violated a clearly established right." *Id.* (internal quotations omitted). Again, there is simply no evidentiary support for such a claim in this case.

3

parties do not dispute, at least for purposes of summary judgment, that Mitchell abused D.T. Thus, the Court, in its earlier opinion, focused on the final two elements of the Thorpe's Title IX claim.

In its March 2014 order, this Court found that Thorpe had put forth enough evidence to create a jury question about whether Hamilton and Turner were on actual notice that Mitchell posed a substantial risk of sexually abusing other students. (DE 76, p. 18). The Court based that decision on testimony from A.R.'s father that indicated Turner and Hamilton believed the text messages between A.R. and Mitchell were of a sexual nature, evidence that Mitchell was texting at least four other eighth grade girls aside from A.R., evidence that girls were texting Mitchell about what other girls thought of him, and testimony from Mitchell that the day he resigned he recalled that Superintendent Turner couldn't believe that Mitchell had done this all *again*. Further, even the school officials' decision to suspend Mitchell for ten days suggests that they knew Mitchell was doing something beyond simply texting students. With regard to deliberate indifference, the question in this matter is whether the decision to suspend Mitchell for ten days at the end of the school year without pay was clearly unreasonable in light of the known circumstances. Because the Court found there was a dispute about what those known circumstances were, it also found that there was a jury question concerning whether the actions of Turner and Hamilton were deliberately indifferent.

In support of its motion to reconsider, the Board relies almost exclusively on *McCoy*, which is an unpublished Sixth Circuit case in which the Court of Appeals affirmed the district court's grant of summary judgment in a Title IX case. 315 Fed. Appx. at 391. In that case, a teacher kicked a female student in her buttocks, grabbed a student's arm and received a letter warning to never place his hands on a student. The next year, students claimed that the teacher

4

pinched them in their chest and posteriors. The teacher received another letter warning him to never touch students. The following school year, a student accused the teacher of touching his thigh, and the teacher explained he only did so to steady himself while rising from the classroom floor. *Id.* at 389. A final incident occurred when a student claimed that the teacher had put his hand down her pants in the classroom. The teacher was ultimately criminally prosecuted. The Court said, "In less obvious cases, the proportionality of the school's response in light of the available information lies at the heart of the indifference analysis." *Id.* 391. The Court went on to affirm the district court's granting of summary judgment and reasoned, "Had there been a more discernible and explicit form of sexual harassment in the form of verbal or physical sexual contact, the district's decision to repeat its measures may have constituted deliberate indifference." *Id.* at 392.

Central to the *McCoy* decision was that the known circumstances surrounding the teacher's behavior were sparse, and "the school was made aware of several instances of physical contact that were ostensibly *non-sexual* but could have served as potential indicia for sexual malfeasance." *Id.* at 392. In *McCoy*, there was no factual dispute; the school officials never believed the touchings were of a sexual nature. By contrast, Thorpe alleges and provides testimony and other evidence to show that Hamilton and Turner believed that Mitchell was engaging in sexual texting and potentially more. In other words, there is a factual dispute, and the Board is able to submit its own evidence to show that Hamilton and Turner were not aware of the sexual nature of the text messages. However, if a jury found that Hamilton and Turner knew that Mitchell was making sexual advances toward middle school girls through text messaging or other means, then a reasonable jury could conclude that a ten day suspension of Mitchell was clearly unreasonable.

5

In short, as the Court in *McCoy* indicated, "the proportionality of the school's response in light of available information lies at the heart of the indifference analysis." *Id.* at 391. The issue in this case is how much was apparent to school officials. This Court is unable, on a motion for summary judgment, to say there is no factual dispute about whether Hamilton and Turner knew that Mitchell was sending sexual text messages to middle school girls. Thus, this Court is unable to say as a matter of law, that they were not deliberately indifferent.

## IV. CONCLUSION

Accordingly, for all the reasons stated above, the Board's motion to reconsider (DE 77) is **DENIED**.

Dated August 4, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY